822 So.2d 555 (2002)
DEPARTMENT OF CHILDREN AND FAMILIES, Appellant,
v.
V.V. and R.M., as Parents of S.M., a child, Appellees.
No. 5D01-701.
District Court of Appeal of Florida, Fifth District.
July 26, 2002.
Rehearing Denied July 29, 2002.
Kelly J. McKibben, Child Welfare Legal Services, Department of Children and *556 Families, Cocoa, and Alan Abramowitz, Chief Legal Counsel, Department of Children and Families, Orlando, for Appellant.
Steven G. Casanova, of Steven G. Casanova, P.A., Melbourne, for Appellees.

ON MOTION FOR REHEARING
GRIFFIN, J.
The appellant has filed a motion for rehearing of our prior opinion. We grant the motion and issue the following opinion in its stead.
The Department of Children and Families ["DCF"] appeals a final judgment dismissing its combined petition for dependency and termination of parental rights of the infant, S.M. DCF argues that the trial court abused its discretion in dismissing its petition for termination of parental rights when there was clear and convincing evidence of prospective abuse. Alternatively, DCF contends the trial court abused its discretion in dismissing its petition for dependency because a preponderance of evidence demonstrated present and prospective abuse and neglect.
The petition, relying on section 39.806(1)(c) and (i)[1], alleged that on April 26, 2000, the father, Roy McCormack, assaulted the mother, Victoria Vaught, in the presence of the child, S.M., and that at the time of the domestic dispute, the parents and the child were living in a motel room which was strewn with beer bottles, pornographic magazines and condoms. A crack pipe and a bag which the mother admitted had contained cocaine were retrieved by law enforcement at the time of the parents' arrest.
The mother and the father had another child, D.V., who had been removed at one month of age from their custody in Mississippi, under markedly similar circumstances. The parents were living in a motel room which contained a large quantity of pornography, including pictures of the mother engaging in sexual acts, and there were pictures of D.V. surrounded by large sums of cash. The parents were arrested in connection with a check scam operation. They were given a case plan to have D.V. returned to them, but they failed to comply with the case plan and their rights to the child were terminated by the State of Mississippi in March 2000.
At the hearing concerning S.M., the Department presented the deposition testimony of Carrie Munson ["Munson"], a case worker for the Mississippi Department of Human Services, Division of Family and Children Services. Munson testified that she responded to a call on September 2, 1998, at the Comfort Inn in South Haven, Mississippi, where the mother and father were being arrested for possession of drugs and paraphernalia. Munson attempted to interview the mother at the scene but was unable to do so because of the mother's intoxication. Munson observed pipes and other drug related items, as well as pornographic pictures, in the motel room. It appeared that the parents and their one-month-old child had been *557 living in the motel for some time. Munson sheltered the child and attempted a family placement unsuccessfully.
Munson prepared a case plan with the parents, requiring them to submit to random drug testing, enter a rehabilitation program, attend parenting classes, and secure suitable housing and employment within six months. Munson supplied the parents with numerous referrals for services, but neither parent complied with any of the plan requirements. The parents also failed to regularly visit the child during the case plan, and when they did show up for visits, they mainly would argue with each other.
On June 16, 1999, the mother also informed Munson that she was five months pregnant (with the child who is the subject of this proceeding) and had not had any prenatal care. In fact, the mother said she was having a problem with drugs during her pregnancy and asked for help getting into a treatment program. Munson helped the mother get into a program where she could remain drug free until the baby was born, but she only stayed one week.
After six months, the State of Mississippi moved to terminate parental rights. Although the parents hired an attorney to represent them, they later fired him and proceeded without one. The parents failed to appear at the termination hearing and the court terminated both parents' rights to D.V.
At the hearing concerning S.M., the mother testified that the 1998 incident resulted from a history of domestic violence with the father. She denied that any sexual acts depicted in the pictures were committed in the child's presence. She admitted signing a case plan, knowing she had to complete it to get her child back, but failing to comply. She also admitted having a drug problem at that time and failing to complete her rehabilitation program or appear at the termination of parental rights hearing.
Officers of the Cocoa Beach Police Department testified they were called to the Motel 6 to investigate a reported domestic disturbance. S.M. was present in the motel room with the mother and father. The mother said that the father had "shoved her and grabbed a hold of her hair." The father was arrested for child abuse and domestic violence.
Because of the prior termination of parental rights in Mississippi, DCF filed a joint petition for dependency and a termination of parental rights pursuant to section 39.806(1)(i), Florida Statutes. Although DCF did not offer the mother a case plan, they arranged for visitation and gave her referrals for services. DCF Family Services Counselor, Tammy Green ["Green"], testified that she recommended that the mother attend parenting classes and take random drug tests, but the mother failed to do either one. The mother attended eleven of twenty-one scheduled visitations. Some of these failures to show for visitation resulted from the mother being incarcerated in Tennessee.
Green further testified that the child was living in a stable adoptive foster placement since April 2000. The foster parents had bonded with the child and wished to adopt. The guardian ad litem recommended termination of parental rights and adoption of the child.
DCF also called Rockledge Police Officer Mathew Reed, who testified that on July 10, 2000, he responded to another disturbance involving the mother and father. The mother told Officer Reed that despite having an injunction against the father, she invited him over that night and they had another altercation.
*558 The mother testified that she had been recently hired as a secretary and had not had any contact with the father in the preceding five months, except for a threatening phone call. The mother explained that she did not complete all her visitations with the child because she was incarcerated in Tennessee on an outstanding violation of probation charge. She also admitted having a positive drug test in July 2000 and failing to start parenting classes, as recommended. When asked if she was taking drugs in July 2000, she invoked the Fifth Amendment privilege against self-incrimination.
At the conclusion of the evidence, the trial court issued an extensive ruling in open court. Significantly, it found that:
[A] TPR, in a foreign or sister state, must, of necessity, meet the same procedural requisites, and afford the defendant parent substantially the same rights as are afforded under the Florida Constitution, and the Florida Statute.
In the decree in the Chancellory Court judgment terminating parental rights from DeSoto County, Mississippi, dated the 27th of March 2000, and the name of the Judge is, I can't make it out, nor the Chancellor, I can't make out from the decree, but it refers to Mississippi Code of 1972.
The burden being upon the Department of Children and Families, then, is to establish that the TPR in the sister state met, at least in major part, the same standards that would have to be met in the Florida jurisdiction. I find that the Department has not shown, to any substantial decree, whatsoever, that Ms. McCormack was affordedMs. Vaught, excuse meMs. Vaught was afforded those rights in Mississippi.
[Emphasis added]. The only such right identified by the court was the lack of counsel at the termination hearing. Thus, because the trial court refused to consider the termination of parental rights by the Mississippi court, which is itself a statutory ground for termination, the court concluded that the failure to offer a case plan and services to the mother was fatal to the termination of parental rights petition. As for dependency, the court again rejected any evidence of the Mississippi proceedings, found no competent evidence of the mother failing a drug screen in July 2000 and no evidence of current drug use.
We agree with DCF that the trial court erred in refusing to recognize the termination of parental rights in Mississippi for purposes of section 39.806(1)(i). Principles of comity and of full faith and credit[2] demand that the judgment be recognized. No paramount rule of public policy dictates otherwise.
The trial court's decision that the grounds for dependency were not established also suffers from the trial court's predicate determination that the events in Mississippi were entitled to no weight. The dependency issue must therefore also be revisited in light of this opinion. Circumstances warrant that a new hearing before a different judge be conducted expeditiously.
REVERSED and REMANDED.
PALMER, J., concurs.
PLEUS, J., dissents, without opinion.
NOTES
[1] These two provisions allow the department to file a petition for termination of parental rights if:

(c) When the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. Provision of services may be evidenced by proof that services were provided through a previous plan or offered as a case plan from a child welfare agency.
and
(i) When the parental rights of the parent to a sibling have been terminated involuntarily.
[2] See, e.g., Rauch v. Rauch, 711 So.2d 582 (Fla. 4th DCA 1998); State, Dep't of Health and Rehab. Servs. v. Heidler, 629 So.2d 1073 (Fla. 2d DCA 1994).